IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO9. 04-42803-H2-7 |
| SPRINGBROOK INDUSTRIES | § | |

## MEMORANDUM AND ORDER IMPOSING SANCTIONS
## AGAINST COUNSEL FOR THE DEBTOR

    This case was filed through counsel, Bruce A. Buskirk ("Counsel") on September 4, 2004. After hearing, the Court concludes that Counsel has violated Rule 9011 of the Federal Rules of Bankruptcy Procedure (FRBP 9011). Therefore, sanctions are imposed.

Prior Proceedings

    By order issued November 21, 2005 (doc. # 39), the Court gave Counsel the notice required by Rule 9011(c)(1)(B) of the conduct that appeared to violate Rule 9011. On December 20, 2005, the Court held a hearing on that conduct.

Facts

    With the bankruptcy petition, on September 4, 2004, the Debtor filed bankruptcy schedules and statements of financial affairs. Those documents are materially inaccurate. Counsel counseled the Debtor and prepared those schedules and the statement of financial affairs. The most material inaccuracies are that the schedules list no assets and only two creditors: a mortgage lien creditor and a claim by Counsel (for his attorneys' fees.) Counsel was well aware that the Debtor owned real property. In fact, the pending foreclosure on that property was the reason the bankruptcy case was filed. There are substantial other irregularities set forth below.

    At a hearing on November 18, Counsel told the Court that the bankruptcy petition was filed to delay foreclosure on a parcel of real property, in the hope that the property could be sold by the Debtor. Debtor's CEO ("Ms. Culwell") stated at the hearing that Counsel recommended the bankruptcy filing "strictly" to save the building. As explained below, Counsel's strategy could not be legitimately accomplished by filing a chapter 7 case.

    The Debtor failed to appear through an officer or other representative at the creditors' meeting first scheduled for October 14 and continued to October 28 and then continued to November 8, 2004. On March 23, 2005, the chapter 7 trustee filed a motion to designate individuals to file accurate schedules and to attend the creditors' meeting. That motion was resolved by agreed order of May 18 designating Ms. Culwell and her husband to file valid schedules and a valid statement of financial affairs. Ms. Culwell represents to the Court that her

failure to attend the creditors' meetings and the need for filing a contested matter to designate a corporate representative were totally unnecessary and caused only failure of assistance by Counsel for prosecution of the bankruptcy case.

After the May 18 order, Counsel prepared amended bankruptcy schedules and an amended statement of financial affairs which were signed by Ms. Culwell and were filed (on June 22). Ms. Culwell attended a creditors' meeting (on July 15). The amended bankruptcy schedules and statement of financial affairs are materially different from the initial schedules and statement of financial affairs:

(a)     Schedule A of the initial schedules do not disclose any real property. The amended schedules list a building at 4331 Brightwood Drive and a mortgage of $595,474.75.

(b)     Schedule B of the initial schedules do not disclose any personal property. The amended schedules list personal property worth $10,776.75.

(c)     The initial schedules list one secured creditor: Alpha Invesco, which held the mortgage on the Brightwood Drive property. The amended schedules show an additional secured creditor holding a $39,957.10 lien on that building.

(d)     The initial schedules list no unsecured creditors without priority. The amended schedules list Dolphin Capital holding two deficiency claims for copier leases ($14,361.10 and $15,736.53).

(e)     The initial schedules list no executory contracts and no unexpired leases. The amended schedules show Walmart Real Estate Business Trust as lessor of a lease, in default, that is to be assumed. Wal Mart has filed a proof of claim for almost $2 million.

(f)     The initial statement of financial affairs states that the Debtor had no income from operation of a business in this year and the two prior years. The amended statement shows income as follows:     2003          $1,355,618.19
                2004             366,474.42
                2005               4,375.00

(g)     The initial statement of financial affairs discloses no payments to creditors in the 90 days prior to bankruptcy. In the amended statement the Debtor discloses material payments, including payments to Counsel. The amended statement also shows payments to Ms. Culwell in the amount of $103,613.80 (which apparently includes payments made postpetition.) Not only does the amended statement conflict with the initial statement, it conflicts with Counsel's own disclosure of compensation. In Counsel's initial disclosure (docket # 1 undated but filed September 4, 2004) Counsel stated that he had agreed to accept $1,000 for his services and that he had received no part of this payment prior to the filing of the statement. In his amended Rule 2016(b) statement dated June 22, 2005, docket # 26, Counsel represented that prior to filing that document he had received no payments related to this bankruptcy case. In the amended statement of financial affairs, questions 3, the Debtor discloses payments to Counsel as follows:

    $1,260 paid 8/13/04
    $1,850 paid 9/13/04
    $1,000 paid 9/30/04

(h) In question # 9, the Debtor discloses a payment to Counsel as follows:
    $1,209 paid 9/4/04
The answer to this question contradicts the original answer to question # 9 which states that no funds were paid 9/4/04.

(i) The initial statement of financial affairs discloses no suits against the Debtor. The amended statement indicates 3 suits that have progressed to judgment.

(j) The initial statement of financial affairs disclose no repossessions or seizures prepetition. The amended statement indicates 5 seizures of vehicles prepetition and three seizures of vehicles postpetition.

(k) The initial statement of financial affairs does not give any information concerning "Selected Lands Limited # 21" as a secured creditor. The amended statement indicates that this creditor foreclosed on "underdeloped land" in May, 2004.

 Walmart is the only creditor (other than taxing districts that may be secured by the foreclosed property) that has filed a proof of claim. The Court cannot determine whether all creditors have been given notice of this bankruptcy case adequate to permit them to file proofs of claim.

Filing the Petition for an Improper Purpose

 There is nothing inherently wrong with attempting to avoid foreclosure on real property to preserve value for creditors and for equity interest owners, provided that the bankruptcy filing is prosecuted with due respect for all objectives and obligations of the Bankruptcy Code. But in this case, statements by Counsel and by Ms. Culwell in Court on November 18 indicated that delay of foreclosure was the sole motive and that Counsel never intended to prosecute the case adequately. Indeed, counsel failed even to advise the Debtor concerning the duties, responsibilities, and appropriate objectives of a Debtor in a bankruptcy case. Counsel's defalcations caused material prejudice to the administration of this bankruptcy case and substantial distress for the Debtor's principals.

 Counsel's explanations to the Court confirm his violation of Rule 9011 or his incompetence in bankruptcy law. Counsel filed a chapter 7 petition. Under chapter 7, authority to sell the Debtor's real property vested in the chapter 7 trustee. Nevertheless, Counsel intended for the Debtor to negotiate and to consummate a sale of the building and intended to conclude the case after the real property sale or foreclosure was consummated. The only way that Counsel could have achieved his stated, intended objective would have been to obstruct the chapter 7 trustee by

filing false schedules, negotiate the sale of the property, and dismiss the case in time to sell the property "outside" of bankruptcy.  This is an improper purpose for filing a bankruptcy petition.

False Schedules

As noted, the initial schedules were materially false. Although FRBP 9011 does not require  an attorney to sign schedules and statements of financial affairs, it provides that the party presenting them to the Court (in this case Counsel) certifies (by filing them, by presenting them to the Court, and by later advocating them) that they are not presented for any improper purpose such as to cause unnecessary delay and that the allegations have evidentiary support. By signing the petition in this case and by presenting the initial schedules, Counsel represented to the Court that the schedules had evidentiary support.

Counsel may put reasonable reliance on information provided by his client.  But in this case Counsel knew that the information in the original schedules and statement of financial affairs was false.  Counsel stated that the principal purpose of the bankruptcy case was to "save" valuable real estate.  But the schedules that he filed stated that the Debtor did not own real estate.  Counsel stated that he had represented the Debtor for years, but none of the transactions and litigation related to those prior engagements was disclosed.  Even the answers to questions about transactions between the Debtor and Counsel were false.  Clearly, Counsel knew that the bankruptcy schedules that he prepared and filed with the Court were false.

Failure to Explain Legal Matters to the Client Sufficient to Allow the Client to Make Informed Decisions

Ms. Culwell told the Court on November 18 that Counsel had recommended the filing of the bankruptcy case "strictly" to delay foreclosure, but that Counsel had not explained bankruptcy law, the bankruptcy process, or her responsibilities as a corporate officer of a bankruptcy debtor. She stated she did not attend 3 creditors' meetings because Counsel had told her that the case was over once the real property had been foreclosed. She further stated that she did not understand her responsibilities until the chapter 7 trustee filed a motion to designate her as the responsible person to attend the creditors' meeting and to file corrected schedules. She explained that she wanted the trustee to liquidate the corporate assets to pay creditors, but she asked Counsel to file a motion to dismiss because she thought that dismissal of the case was necessary to finish her duties and to allow the trustee to liquidate assets and pay creditors. Counsel did not correct Ms. Culwell's misunderstanding, but merely filed the motion.   Finally, Ms. Culwell stated that once she understood the import of the motion (by reading the trustee's response to the motion), she attempted to contact Counsel to withdraw the motion but Counsel did not return her call or communicate with her to prepare for the November 18 hearing. Ms. Culwell therefore attended the November 18 hearing without benefit of prior conference with Counsel and without benefit of counsel at the commencement of the hearing because Counsel arrived late to the hearing.  It was clear that Ms. Culwell was distressed by not being informed about how to proceed in the bankruptcy case and about the consequences of motions that had been filed.

Counsel did not materially dispute Ms. Culwell's statements, but did give an explanation. Counsel's explanation is either intentional falsehood or gross incompetence. Filing a chapter 7 case vests all property of the estate in the chapter 7 trustee. Yet Counsel states that he intended for Ms. Culwell, as an officer of the Debtor, to negotiate for and to sell the property postpetition. Under bankruptcy law, Ms. Culwell did not, and could not, have authority to negotiate or to sell. And equally important, the property, and its potential sale, were not voluntarily disclosed to the trustee and therefore the trustee could not fulfill his statutory duty to evaluate, to negotiate the sale, or to sell the property. Counsel either intended to mislead, or else was incompetent to practice bankruptcy law.

Incompetent Motions to Dismiss (docket # 26) and Incompetent Motion to Reconsider (docket # 30)

The motion to dismiss (docket # 27) that Counsel filed simply does not make sense. It states, in essence, that the case should be dismissed because it was initiated by voluntary, not involuntary, petition. Bankruptcy Code § 707(a) provides that the bankruptcy court may dismiss a case " ... only after notice and a hearing and only for cause ..."  No notice of the motion was given to creditors. In addition, the motion alleged merely that the Court should dismiss because the case was commenced by voluntary petition. That is not "cause." Virtually all bankruptcy cases are commenced by voluntary petition. The Court believes that Counsel confused § 707(a) (that applies to chapter 7 cases) with § 1307 (which applies only to chapter 13 cases).[1]

In addition, the motion does not comply with BLR 9013 because it does not contain the appropriate notice that objecting parties must respond timely. Finally, it does not comply with Bankruptcy Code 707(a) (which requires notice and a hearing for dismissal of a chapter 7 case) or with FRBP 1017(f) and 9014(a) which provide the procedure for notice and a hearing.

The Court denied the motion to dismiss because "cause" had not been alleged (i.e., "cause" why the case should be dismissed) because notice had not been given, and because it appeared that the trustee had received assets to distribute to creditors. In response, Counsel filed an incomprehensible motion to reconsider. The motion notes, again, that the case is a voluntary chapter 7 case but adds the allegation that the primary corporate asset has been foreclosed and that the Debtor has turned over other assets to the trustee. It is nonsense to allege that delivery of all assets to the trustee is "cause" to dismiss a chapter 7 case. Delivery of assets to the chapter 7 trustee is part of case administration, not "cause" for dismissal.

False Statements by Counsel to the Court

In addition to false schedules, *etc*., Counsel made false, misleading, or uninformed statements to the Court on November 18. The following facts can be found in the transcript of that hearing and were not denied by Counsel on December 20.

---

[1] In chapter 13, the Debtor has a right to dismiss; "cause" is not required.

Counsel first stated on November 18 that the Court should dismiss the case because the Debtor had no "underlying debt" once the mortgage lender foreclosed. Counsel was corrected on that issue. The Debtor does have creditors. Counsel then stated that although the Debtor had creditors, the Debtor had no assets. When corrected on that issue, Counsel told the Court that the diamonds held by the trustee actually belonged to Ms. Culwell, but Ms. Culwell corrected Counsel on that issue by emphatically stating that the diamonds belonged to the bankruptcy estate. Counsel was uninformed, was not diligent in his representation of his client, or was misleading the Court.

Finally, at the hearing on December 20 Counsel represented that he has decided not to accept any new bankruptcy cases.

## CONCLUSIONS

Counsel violated FRBP 9011 by filing a petition for delay or other inappropriate cause. Counsel failed to investigate adequately the evidentiary support for the petition, schedules and other pleadings, and included information in those schedules and statements that he knew to be false.

**THEREFORE IT IS ORDERED THAT**:

1. Under authority of Rule 9011 of the Federal Rules of Bankruptcy Procedure (FRBP), Counsel is reprimanded for the conduct and defalcations set forth above.

2. Under authority of FRBP 9011 and Bankruptcy Code § 329, Counsel is ordered to pay to the trustee all fees received in connection with this case, whether received before or after the filing of the bankruptcy case, and from whatever source received. Disclosures of payments are set forth above. Payment must be made within 15 days of entry of this order.

3. The Court was inclined to impose much more severe sanctions, until Counsel stated that he intended to file no future bankruptcy cases. The Court orders Counsel to report to the undersigned judge any change in that intention.
4. The Court will send a copy of this opinion and order to Chief Judge Head for consideration of whether further action is appropriate under Local Rule 83.1(L) and the Rules of Discipline in Appendix A to the local rules of the United States District Court for the Southern District of Texas.

SIGNED   December 28, 2005

*Wesley W. Steen*

———————————————
WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE